KLYN, APPELLEE, *v.* ARUTA, APPELLANT. ■

(No. CA 11-111—Decided November 10, 1986.)

*Dworken & Bernstein Co., L.P.A.,* and *Andrew P. Buckner,* for appellee.
*Joseph T. Svete,* for appellant.

FRANKLIN, J. Defendant-appellant Michael Aruta has perfected a timely appeal and seeks a reversal of the jury's assessment of damages on two grounds: that the trial court committed error when it granted a directed verdict in favor of plaintiff-appellee Deborah Klyn and against him on the issue of liability, and on the basis that the trial court refused to instruct the jury on the issue of plaintiff-appellee's comparative negligence.

The facts before the court establish that on July 3, 1983, Deborah Klyn (hereinafter referred to simply as "appellee"), Angela Untisz and Tony "Bart" Long went water skiing with Michael Aruta (hereinafter referred to simply as "appellant") on his father's (Frank Aruta's) boat near Fairport Harbor, Ohio. Everyone mutually agreed to stop water skiing after Angela Untisz, the last one to water ski, was back on the boat. Appellee began to pull in the ski rope by coiling it. When appellant observed appellee's method of coiling the ski rope, he instructed appellee to coil the ski rope in a different way. Appellee complied with appellant's instructions. Appellant observed appellee in the right rear seat of the boat on her knees facing backwards bringing in the ski rope when he proceeded to start the boat. However, sometime shortly thereafter, appellee moved from the right rear seat to the top of the motor box and continued to pull in the ski rope. Appellee encountered difficulty in pulling in the ski rope as the boat accelerated. Appellee attempted to throw the ski rope back into the water because she feared she would be pulled into the water. Two theories emerged during the trial as to how appellee ended up in the water. The first theory is that a wave caused the boat to rock which threw appellee into the water while the ski rope was still coiled around her arm and hand. The second theory is that appellee was dragged out of the boat when, as she attempted to throw the ski rope into the water after the boat started forward, the rope caught the large ring on her left hand. Whatever theory is correct, the end result was that appellee lost her left hand.

This action was tried on February 2, 1985. Appellee moved for a directed verdict on the issue of liability at the conclusion of appellant's case. The trial court granted the motion for a directed verdict and further held that appellant's negligence proximately caused appellee's injuries. The trial court instructed the jury that the only issue before it was the amount of compensation. The trial court refused to instruct on whether appellee was comparatively negligent. Appellant perfected a timely appeal setting forth three assignments of error.

"1. The trial court erred to the prejudice of defendant-appellant in granting plaintiff-appellee's motion for a directed verdict on the issue of negligence of defendant-appellant."

Appellant contends that the trial court misconstrued the standard of negligence when it granted a directed verdict based upon R.C. 1547.07, the effect of which was to render appellant negligent *per se*. Appellant further contends that the trial court committed error by directing a verdict in appellee's favor because it is strictly within the province of the jury to determine whether negligence exists. Appellee contends that the motion for a directed verdict was properly granted based upon the evidence contained in the record which sufficiently supported the trial court's finding of appellant's negligence and ultimate total liability. Appellee further contends that because a trial court has the power to direct a verdict, it does not matter whether the evidence adduced

established negligence *per se* or prima facie evidence of negligence.

Appellee is absolutely correct in stating the proposition of law that the trial court has the power to grant a directed verdict. However, appellee fails to recognize the significance of Civ. R. 50(A)(3) which requires the trial court to "state the *specific* grounds" on which it bases its directed verdict. (Emphasis added.) The trial court, in the instant case, clearly stated the specific grounds for the directed verdict when it said:

"THE COURT: Okay. So my ruling regarding directed verdict as to Michael is under 1547.07[.] I will direct a verdict. The motion is granted.

*"I might have a problem with it if we did not have 1547.34* which specifically says that it is prima facie evidence of negligence. So I find that Michael was recklessly in operation of that vehicle at the time that the plaintiff received her injury." (Emphasis added.)

The trial court further stated:

"All right. So then regarding 1547.07 and .34 I am directing the jury to return a verdict in favor of the plaintiff. And the only issue then for the jury to consider is the damage and the issue of whether or not Frank was negligent."

It is clear that the trial court relied upon R.C. 1547.07 and 1547.34 when it granted a directed verdict in favor of appellee and against appellant. Appellee would have this court believe, based on the conversation between the court and counsel which preceded the trial court's ruling on the directed verdict, that the trial court held that reasonable minds could come to but one conclusion. However, in the recorded discussion that preceded the trial court's ruling on the motion for directed verdict, the trial court repeatedly referred to the statute. In effect, the trial court applied a negligence *per se* standard based upon R.C. 1547.07 and 1547.34.

To determine whether a violation of a statute constitutes negligence or negligence *per se,* the statute itself must be examined. *Swoboda* v. *Brown* (1935), 129 Ohio St. 512, 522-523, 20 O.O. 516, 521, 196 N.E. 274, 279, aptly distinguishes between a general duty statute and a specific duty statute. The *Swoboda* court stated:

"Where the standard of duty is thus fixed and absolute, it being the same under all circumstances, the failure to observe that requirement is clearly negligence *per se.* But where duties are undefined, or defined only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase negligence *per se* has no application."

The statutes in question state:

"Any person who operates any watercraft, or manipulates any water skis, aquaplane, or similar device upon the waters in this state carelessly or heedlessly, or in disregard of the rights or safety of any person, watercraft, or property, or without due caution, at a rate of speed or in a manner so as to endanger any person, watercraft, or property shall be guilty of reckless operation of such watercraft or other device." R.C. 1547.07.

"Violations of sections 1547.02 to 1547.36 of the Revised Code, which result in injury to persons or damage to property shall constitute prima-facie evidence of negligence in a civil action." R.C. 1547.34.

Whether R.C. 1547.07 is a specific or general duty statute has not, as far as this court can ascertain, been determined. However, R.C. 4511.20, which governs the reckless operation of vehicles, provides useful insight into analyzing R.C. 1547.07, which governs

reckless operation of boats.[1] R.C. 4511.20 states:

"No person shall operate a vehicle, trackless trolley, or streetcar on any street or highway in willful or wanton disregard of the safety of persons or property."

Clearly R.C. 4511.20 is *not* a specific requirement statute. *Koppelman* v. *Springer* (1952), 157 Ohio St. 117, 47 O.O. 95, 104 N.E. 2d 695. The *Koppelman* court, which analyzed G.C. 6307-20 (the predecessor to R.C. 4511.20), held that the statute provided a general rule of conduct. The *Koppelman* court went on to state that the general rule of conduct enunciated in R.C. 4511.20 required that "no person shall operate a vehicle * * * without due regard for the safety and rights of pedestrians * * * and so as to endanger the life * * * of any person while in the lawful use of the * * * highway." *Koppelman, supra,* at paragraph one of the syllabus. Likewise, this court finds that R.C. 1547.07 is not a specific duty statute because it provides a general rule of conduct which requires that "[a]ny person who operates any watercraft * * * upon the waters in this state * * * in disregard of the rights or safety of any person, watercraft, or property * * * so as to endanger any person, watercraft, or property shall be guilty of reckless operation of such watercraft or other device."

Having found that R.C. 1547.07 and 1547.34 provide for a general rule of conduct, we find that the trial court committed error by directing a verdict in appellee's favor. The record clearly substantiates that the trial court relied on R.C. 1547.07 and 1547.34 when it

removed the issue of liability from the jury and directed a verdict in appellee's favor. One appellate court has determined that a violation of R.C. 4511.20 (reckless operation) and R.C. 4511.21 (speeding) is prima facie negligence only, and held it was error to charge a jury that a violation of either section constitutes negligence *per se. Roeder* v. *Fisher's Bakery, Inc.* (1963), 118 Ohio App. 339, 340, 25 O.O. 2d 217, 218, 188 N.E. 2d 78, 80. Likewise, because R.C. 1547.34 states that a violation of R.C. 1547.07 "shall constitute prima-facie evidence of negligence in a civil action," we find that while the trial court did not instruct the jury that the violation of R.C. 1547.07 was negligence *per se,* by directing a verdict the effect was the same.

Accordingly, we find that the trial court committed error when it directed a verdict on the issue of liability in favor of appellee. Appellant's assignment of error number one is found well-taken and it is hereby granted.

"2. The trial court erred to the prejudice of defendant-appellant in sua-sponte directing a verdict against him on the issue of liability, and a verdict in favor of plaintiff-appellee on the issue of comparative negligence.

"3. The trial court erred to the prejudice of defendant-appellant in refusing to instruct the jury on the issue of comparative negligence on the part of plaintiff."

This court notes its responsibility to address each assignment of error but because the two assignments of error are related they will be addressed together but ruled upon separately.

Appellant argues that the trial

---

[1] The court notes that appellee has relied upon R.C. 4511.201 which prohibits reckless operation of vehicles off streets and highways. This statute is not relevant because it is not a fair comparison to R.C. 1547.07, the reckless-operation-of-boats statute.

court committed error by failing to instruct the jury on the issue of appellee's comparative negligence, based upon a violation of R.C. 1547.22, a specific safety statute. Appellee argues that because appellant's counsel failed to object to the jury instructions his right to appeal was effectively waived. Further, appellee argues that no evidence is contained in the record which would support appellant's allegation that appellee violated R.C. 1547.22.

The record is clear that appellant's counsel preserved his right to appeal on the issue of jury instructions:

"MR. SVETE: All right. That's right. I am submitting for purposes of the record, the instruction on comparative negligence which includes the interrogatories and the percentage as well as the general verdict."

The court turns to the issue of whether there was evidence to establish that appellee may have contributed to her injuries by sitting on the motor box in violation of R.C. 1547.22, which states:

"No occupant of any watercraft under way on the waters in this state shall sit, stand, or walk upon any portion of the watercraft not specifically designed for such movement, except when immediately necessary for the safe and reasonable navigation or operation of such watercraft. No operator of a watercraft under way on the waters in this state shall allow any occupant of the watercraft to sit, stand, or walk on any portion of the watercraft not specifically designed for that use except when immediately necessary for the safe and reasonable navigation or operation of the watercraft."

This court has not been requested to decide whether R.C. 1547.22 is a specific safety statute. Rather, the question before us is whether evidence existed which could prove that appellee may have been comparatively negligent by placing herself in a precarious situation by sitting on the motor box of the boat which may have contributed to her fall into the water and subsequent injuries. After a careful review of the transcript of the proceedings, this court finds that testimony was introduced into evidence that would place into issue whether appellee was comparatively negligent. Appellee testified she sat on the motor box. Bart Long, a passenger, testified he saw appellee sit on the motor box. Angela Untisz, a passenger and appellee's stepsister, testified she was worried about her sister falling out of the boat because she was leaning against the back of the boat. Appellant also testified that he would have had appellee move off the motor box if he had known appellee had switched positions. Based on these facts, the court finds that a genuine issue exists as to whether appellee was comparatively negligent. Reasonable minds could differ as to whether appellee was comparatively negligent by sitting or leaning on the motor box of the boat driven by appellant. The trial court committed error when it failed to instruct on the issue of comparative negligence although properly pleaded. This finding is consistent with *Junge* v. *Brothers* (1985), 16 Ohio St. 3d 1, 16 OBR 254, 475 N.E. 2d 477, and *Hitchens* v. *Hahn* (1985), 17 Ohio St. 3d 212, 17 OBR 447, 478 N.E. 2d 797.

Accordingly, appellant's second and third assignments of error are found to be well-taken and are hereby granted.

Counsel for the appellee has requested this court, should it find in favor of the appellant and remand the case to the trial court for trial on the issue of comparative negligence, and/or negligence, that it should allow the jury findings on the assessment of damages *only* to stand. Appellant con-

tends that there is no assignment of error addressed to the excessiveness of the damages as found by the jury. This court believes that the damage issue should also be retried along with the negligence and comparative negligence issues. This court so orders.

For the reasons stated in the opinion of this court, assignments of error two and three are sustained, and it is the judgment and order of this court that the judgment of the trial court is reversed *in toto.* This cause is remanded to the trial court for a new trial consistent with these findings.

*Judgment reversed.*

BROGAN and ECONOMUS, JJ., concur.

FRANKLIN, J., retired, of the Court of Common Pleas of Lucas County, BROGAN, J., of the Second Appellate District, and ECONOMUS, J., of the Court of Common Pleas of Mahoning County, sitting by assignment.